IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-00478-RBJ

HILDA VALDEZ,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Hilda Valdez's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561

F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Ms. Valdez is 55 years old. *See* R. 168. She lives in Thornton, Colorado and has a high school education. R. 37, 171. In the past, Ms. Valdez has worked as a knife assembler, hospital products assembler, bus driver, inventory control clerk, and telephone order clerk. R. 37–45. She worked until March 2013 as a knife assembler, but this job ended after Ms. Valdez "pushed" her employer to terminate her because she was missing a lot of work. R. 39. She has not held substantial gainful employment since her alleged disability onset date of March 1, 2013. R. 24.

Ms. Valdez suffers from several medical conditions, including idiopathic small fiber neuropathy (a sensory nerve disorder with no identifiable cause), depression, anxiety, fibromyalgia, and cervical disk disease. R. 168. She claims that her neuropathy causes numbness and burning pain in her hands and feet, and that it causes her to lose her balance after standing or walking for too long. R. 20. Additionally, Ms. Valdez claims that her medications make her so drowsy that she often has to lie down throughout the day. R. 45, 52–53.

A. **Procedural History**.

Ms. Valdez applied for disability insurance benefits and social security income on January 31, 2014. R. 14, 165–66, 167–76. After her applications were administratively denied on June 11, 2014, Ms. Valdez requested a hearing before an administrative law judge ("ALJ"). R. 32–55, 94–103. On September 28, 2015 a hearing was held before ALJ Rebecca LaRiccia in Denver, Colorado. R. 32–55. The ALJ issued a decision denying benefits on November 19,

2

2015. R. 11–31. Ms. Valdez appealed this decision to the Appeals Council, but the Council denied review on January 3, 2017. R. 1–6. Ms. Valdez then filed a timely appeal in this Court. ECF No. 1. Because the Appeals Council denied review, the ALJ's decision serves as the Commissioner's final decision for purposes of this Court's review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). The issues have been fully briefed. ECF Nos. 14–16.

## B. The ALJ's Decision.

The ALJ determined that Ms. Valdez is not disabled and therefore denied benefits. R. 14. In making this decision, the ALJ followed the Social Security Administration's standard five-step evaluation process. First, the ALJ found that Ms. Valdez has not engaged in substantial gainful activity since her alleged onset date of March 1, 2013. R. 16. At step two, the ALJ found that Ms. Valdez has the severe impairment of neuropathy. Also during step two, the ALJ assessed Ms. Valdez's mental impairments of depression and anxiety in accordance with the psychiatric-review technique required by Social Security regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a. This technique required the ALJ to assess the degree to which Ms. Valdez's mental impairments limit her functioning in four areas: (1) daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* The ALJ found that Ms. Valdez has mild limitations in the area of "concentration, persistence, and pace," but that Ms. Valdez's depression and anxiety are non-severe impairments. R. 19.

At step three, the ALJ found that Ms. Valdez's impairments do not meet a Listing. R. 19. Then the ALJ determined that Ms. Valdez has a residual functional capacity ("RFC")—which is a claimant's ability to do work on a sustained basis despite limitations from her impairments—to perform sedentary work subject to some limitations. R. 20–24. At step four, the ALJ posed to a vocational expert a hypothetical set of facts which represented Ms. Valdez's RFC, age,

education, and work skills. Using the vocational expert's response to the hypothetical, the ALJ determined that Ms. Valdez is unable to perform any of her past relevant work. R. 24. However, at step five, the ALJ determined that Ms. Valdez is capable of performing the semi-skilled job of a sedentary information clerk. R. 25. Therefore, the ALJ determined that Ms. Valdez is not disabled and denied benefits. R. 26.

### III. ANALYSIS

Ms. Valdez argues that reversal is appropriate because the ALJ made the following errors: (1) failing to consider Ms. Valdez's mental limitations during the RFC determination and in the hypothetical posed to the vocational expert; (2) failing to consider Dr. Hutcheson's mental limitations findings; (3) failing to properly assess Ms. Valdez's credibility; and (4) failing to consider Ms. Valdez's cervical spine impairment at step two. After reviewing the ALJ's decision in accordance with the substantial evidence standard, I decline Ms. Valdez's request to reverse and remand this case.

**A. The ALJ's failure to consider Ms. Valdez's mental limitations during the RFC determination and hypothetical posed to the vocational expert.**

Ms. Valdez argues that the ALJ's failure to discuss her mild mental limitations in "concentration, persistence, and pace" during the RFC determination and in the hypothetical posed to the vocational expert warrants remand. I disagree.

As noted above, an ALJ is required to determine whether a claimant has a "severe" impairment at step two. If one or more of the claimant's impairments are "mental" in nature— impairments such as depression or anxiety—then the ALJ determines whether they are severe by following the psychiatric-review technique described in 20 C.F.R. §§ 404.1520a, 416.920a. Under this technique, as outlined above, the ALJ must assess the degree to which the claimant's mental impairments affect daily living; social functioning; concentration, persistence, and pace;

and episodes of decompensation. *Id.* In Ms. Valdez's case, the ALJ determined that Ms. Valdez has mild mental limitations in the category of "concentration, persistence, and pace" but that in spite of these limitations, her impairments of depression and anxiety are non-severe. R. 18.

Ms. Valdez argues that the ALJ was required to consider her mild limitations during the RFC determination and in the hypothetical posed to the vocational expert, and that the ALJ's failure to do so is reversible error. ECF No. 14 at 2–5. Ms. Valdez concedes that "in many cases the failure to account for such mild limitations in an RFC finding and hypothetical question would likely be harmless error." ECF No. 14 at 5. However, she argues that the ALJ's failure to do so here rises to the level of reversible error because the ALJ determined that Ms. Valdez can perform semi-skilled work as opposed to unskilled work. ECF No. 14 at 2–5. This argument fails for several reasons.

With regard to Ms. Valdez's argument concerning the ALJ's RFC determination, I note that the ALJ did indeed consider Ms. Valdez's mild limitations when determining her RFC. R. 22. The ALJ stated during the RFC determination that she gave partial weight to the opinion of Ms. Valdez's treating physician, Dr. Hutcheson, that "the claimant's depression and anxiety, along with other impairments, could occasionally interfere with the claimant's attention and concentration." *Id.* However, the ALJ continued, "Dr. Hutch[e]son noted that claimant was capable of low stress jobs, and would never be absent from work due to her impairments." *Id.* The ALJ also noted Ms. Valdez's testimony that her medications effectively control the symptoms of her depression and anxiety. R. 23. Based on this evidence, the ALJ determined that Ms. Valdez's mild limitations would not impact her ability to work in any significant way. *Id.* Thus, although the ALJ did not explicitly reference her step two findings concerning Ms. Valdez's mild limitations, she addressed Ms. Valdez's mild limitations within the RFC

5

determination by discussing Dr. Hutcheson's opinion that Ms. Valdez could work in a low-stress environment despite her mental impairments and Ms. Valdez's testimony regarding the efficacy of her medications in controlling her anxiety and depression. Therefore, I find that the ALJ properly considered Ms. Valdez's mild mental limitations during the RFC determination.

Further, I find that the ALJ's decision to omit Ms. Valdez's mild limitations from the hypothetical was proper. Under Tenth Circuit law, an ALJ need not discuss a claimant's "mild limitation found at step two regarding concentration, persistence, or pace" during steps four and five (the steps during which the hypothetical is posed). *Suttles v. Colvin*, 543 F. App'x 824, 826–27 (10th Cir. 2013) (referencing *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished)). This is so because a mild limitation in concentration, persistence, and pace "does not necessarily translate to a work-related functional limitation." *Beasley*, 520 F. App'x at 754. Therefore, "its omission from the hypothetical to the [vocational expert] is a proper consequence of the ALJ's determination that it did not have an effect on RFC." *Suttles*, 543 F. App'x at 826. Here, the ALJ explained during the RFC determination why she did not find that Ms. Valdez's mild limitations would preclude her from work. The ALJ was therefore under no obligation to include Ms. Valdez's mild limitations within the hypothetical posed to the vocational expert at steps four and five. *Id.*

Finally, even if the ALJ had erred, there is no legal support for Ms. Valdez's contention that the ALJ's failure to account for Ms. Valdez's mild limitations transformed from harmless error into reversible error because of the skill-level the ALJ determined Ms. Valdez can perform. Ms. Valdez claims that the "omission of [mild limitations] was recently found to be a basis for remand where the ALJ had found the claimant capable of more than unskilled work," and directs this Court to *Kich v. Colvin*, 218 F. Supp. 3d 342 (M.D. Pa. 2016). ECF No. 14 at 5. However,

6

that was not the holding in *Kich*. *Kich* addressed the manner in which an ALJ should evaluate disability claims where the claimant suffers from a substance abuse disorder. The Court in *Kich* remanded the ALJ's decision because the ALJ failed to follow the correct procedures in evaluating the claimant's substance abuse disorder at the RFC stage. The court never discussed, much less *held*, that the ALJ's finding that the claimant had an RFC for skilled work as opposed to unskilled work was determinative in its review of *Kich*'s claim. *See id.* Therefore, Ms. Valdez finds no support from *Kich* and has cited to no other case that supports her argument. Consequently, we remain in the legal landscape where—in Ms. Valdez's own words—an ALJ's "failure to account for such mild limitations in an RFC finding and hypothetical question [is likely] harmless error." ECF No. 14 at 5.

   **B.  The ALJ's Discussion of Dr. Hutcheson's Mental Limitation Findings.**

Ms. Valdez next contests the ALJ's treatment of Dr. Hutcheson's medical opinions concerning her mild mental limitations. ECF No. 14 at 5. In particular, she takes issue with the fact that the ALJ discussed and "apparently accepted" Dr. Hutcheson's February 2014 opinion concerning Ms. Valdez's mild mental limitations, yet failed to include these limitations in the RFC determination or hypothetical. *Id.* at 6. Alternatively, Ms. Valdez argues that even if the ALJ wished to reject Dr. Hutcheson's opinion, the ALJ did so improperly because she provided no explanation for doing so. *Id.* Ms. Valdez purports that "whichever of these two legal errors the ALJ committed, remand would be warranted." This argument has no merit.

Here, the ALJ plainly explained her treatment of Dr. Hutcheson's opinion during the RFC determination. While acknowledging Dr. Hutcheson's February 2014 opinion that Ms. Valdez's depression and anxiety would occasionally interfere with her attention and concentration, the ALJ noted other evidence in the record that detracted from this opinion. R.

7

22. For example, the ALJ noted that just a few months after Dr. Hutcheson expressed this opinion, Ms. Valdez reported that her medication controlled her depression. R. 17. The ALJ also noted that by August 2015, a year after Dr. Hutcheson expressed this opinion, Ms. Valdez denied having *any* symptoms of anxiety and depression. *Id.* Finally, the ALJ took note of Dr. Hutcheson's statement that Ms. Valdez "would never be absent from work due to her impairments." R. 22. Given this evidence of Ms. Valdez's improving mental health, the ALJ determined during the RFC stage that substantial evidence indicated that Ms. Valdez's mental impairments did not render her unable to work and that Dr. Hutcheson's February 2014 opinion was therefore entitled to only partial weight. *Id.* It reasonably follows that the ALJ chose not to incorporate Dr. Hutcheson's opinion into the hypothetical.

As a result, Ms. Valdez's allegation that the ALJ failed to properly explain her treatment of Dr. Hutcheson's mild limitation findings in the RFC determination and hypothetical has no merit.

### C. Credibility Determination.

Ms. Valdez next argues that the ALJ erred in determining that Ms. Valdez's subjective statements concerning her impairments are not entirely credible. ECF No. 14 at 6–9. Unfortunately for Ms. Valdez, challenges to credibility findings are hard to win. As the Tenth Circuit has explained:

> The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). Consequently, this Court "will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387,

391 (10th Cir. 1995) (internal quotation marks omitted).  After reviewing the evidence, I decline to upset the ALJ's findings here.

When an ALJ assesses a claimant's subjective complaints of pain and other symptoms, she must consider the objective medical evidence that may correlate with the subjective complaints, along with other available evidence, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment other than medication; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  However, the ALJ need not provide a "formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Instead, "[s]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility," the ALJ's requirements are satisfied.  *Id.*

Following these guidelines, the ALJ in this case determined that Ms. Valdez's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence.  R. 20–24.  In explaining this decision, the ALJ noted that Ms. Valdez's treatment history is not as extensive as one would expect of someone with a disability; that the treatment Ms. Valdez received is conservative rather than advanced or surgical in nature; that Ms. Valdez's medications have been effective in controlling her symptoms; that the medical record shows normal diagnostic studies; and that the medical record contains inconsistencies regarding Ms. Valdez's gait.  R. 23.  Further, the ALJ noted that Ms. Valdez's own testimony was inconsistent.  *Id.*  The ALJ referenced, for example, that Ms. Valdez "reported that she stopped working due to her conditions, but also that she lost her job due to attendance."  *Id.*  In

9

addition, the ALJ noted that "[t]he claimant reported to medical providers and physical therapists that she had no history of falling but later testified [at the hearing] that she fell a few times." *Id.* Based on these findings, the ALJ determined that Ms. Valdez's subjective testimony is not entirely credible.

Ms. Valdez attacks this determination for two reasons. First, she takes issue with the fact that the ALJ failed to specifically discuss each of the seven factors listed in sections 404.1529(c)(3) and 416.929(c)(3). However, as mentioned above, an ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence" when making her determination. *Qualls*, 206 F.3d at 1372. Instead, the ALJ need only set forth the specific evidence she relies on in evaluating the claimant's credibility. *Id.* The ALJ's decision satisfies this requirement.

Second, Ms. Valdez attacks the ALJ's credibility finding because she disagrees with the ALJ's interpretation of evidence in the record. ECF No. 14 at 7. For example, she contests the ALJ's finding that Ms. Valdez's testimony concerning why she stopped working is inconsistent. *Id.* at 8 ("It is extremely difficult to understand how the ALJ could offer such an analysis . . . [w]here is there any inconsistency here at all?"). Ms. Valdez also takes issue with the ALJ's statements concerning Ms. Valdez's neuropathy, particularly about the amount and types of treatment Ms. Valdez has received. *Id.* ("The ALJ does not understand the nature of idiopathic small fiber neuropathy or how such a diagnosis is made . . . [t]he ALJ offers generic broad assertions that do not actually make sense upon close examination."). This Court's limited scope of review precludes it from reweighing the evidence or substituting its judgment for that of the Commissioner. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992). I will not, and cannot, referee the proper interpretation of each piece of evidence as Ms.

Valdez implores me to do here. I can only review the ALJ's decision to ensure it was made in accordance with substantial evidence, and I find that the ALJ's determination meets this standard.

### D. Cervical Spine Impairment.

Finally, Ms. Valdez argues that the ALJ committed reversible error by not analyzing whether Ms. Valdez's cervical spine impairment is a "severe" impairment. This argument is without merit.

At step two, an ALJ is required to determine whether any of the claimant's impairments are "severe." An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). If an ALJ determines that the claimant does not have a severe impairment at step two, the ALJ must find that the claimant is not disabled and must deny benefits. *Id.* However, if the ALJ determines that one or more of the claimant's impairments are severe at step two, the ALJ must proceed to step three of the five-step disability determination analysis. *Id.*

Here, the ALJ determined that Ms. Valdez has the severe impairment of neuropathy. R. 16. As such, the ALJ proceeded to step three of the analysis. Nevertheless, Ms. Valdez alleges the ALJ's failure to consider her cervical spine impairment at step two is reversible error. ECF No. 14 at 2. Ms. Valdez's argument is unavailing under the Tenth Circuit's decision in *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), where the court held that an ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment severe." This is so because an ALJ's finding that even a single impairment is severe means that the ALJ may not deny benefits at step two, but instead must proceed to step

three where she will consider the combination of all of the claimant's impairments, not just those deemed to be severe. *Id.* Therefore, the claimant suffers no harm from an oversight at step two if another impairment is deemed severe, because the ALJ will consider all of the impairments anew once she arrives at step three.

Here, the ALJ did indeed consider Ms. Valdez's cervical spine impairment during the RFC analysis after finding Ms. Valdez's neuropathy severe at step two. *See* R. 21. Therefore, Ms. Valdez suffered no harm from the ALJ's omission at step two concerning her cervical spine impairment, and her final argument must fail.

## ORDER

For the reasons described above, the Court AFFIRMS the Commissioner's decision denying Ms. Valdez's application for Disability Insurance Benefits and Supplemental Security Income.

DATED this 4th day of December, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge